**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jonathan Santiago</u>

   v.                                                  Civil No. 14-cv-100-JL

<u>William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.</u>

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Jonathan Santiago is an inmate at the New Hampshire State Prison ("NHSP"). He has sued defendants, employees at the NHSP and/or the New Hampshire Department of Corrections ("DOC"), asserting that NHSP corrections officers used excessive force against him on February 20, 2013, in violation of Santiago's Eighth Amendment right not to be subjected to cruel and unusual punishment. Before the court is defendants' motion for summary judgment (doc. no. 18), alleging that Santiago has failed to exhaust the administrative remedies available to him at the DOC. Santiago has filed an objection (doc. no. 23).

**<u>Summary Judgment Standard</u>**

"'Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law.'" Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (citation omitted); see also Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (citation omitted).

"'The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists.'" Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (citation omitted).  "'Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact.'" Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (citation omitted).  "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his claim." Sánchez-Rodríguez, 673 F.3d at 9 (internal quotation marks and citation omitted).  Under this court's local rules, "[a]ll properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party."  LR 56.1(b).

**Background**

I. **February 20, 2013, Incident**

In the complaint (doc. no. 1), the complaint addendum (doc. no. 9), and Santiago's responses (doc. nos. 19 and 23) to the defendants' motion for summary judgment, Santiago alleges that on February 20, 2013, NHSP Corrections Officer ("C.O.") Craig Orlando spoke to Santiago, who was in his cell in the NHSP's Secure Housing Unit ("SHU"), and told him to "cuff up." When Santiago refused to comply with Orlando's order, Orlando sprayed pepper spray into the cell, and four other C.O.s tackled Santiago to the floor. Once Santiago was on the floor, the officers controlled each of his limbs and head by holding them into the floor. At that point, C.O. Scott Marshall shot Santiago in the head, twice, with a "stun gun," while Santiago was restrained on the floor and entirely under the control of the officers. Santiago alleges that these actions amounted to excessive force.

II. **DOC Grievance Policy**

According to the DOC's Policy and Procedure Directive 1.16 (doc. no. 18-9) )("PPD 1.16"), "[a]ll persons under supervision are informed of the grievance procedures through the Inmate Manual and publication of this PPD." Id. at III(G). The DOC's grievance procedure is three-tiered. See id. at III(F).

3

To satisfy the first level of that procedure, inmates who believe they have been aggrieved must, within thirty days of the incident being grieved, file an Inmate Request Slip ("IRS") with a unit-level staff member. Id. at IV(A). Copies of the IRS are forwarded to the appropriate unit-level staff member for a response and to the inmate. See Aff. of Nancy Wolcott (doc. no. 18-2) ("Wolcott Aff."), at 1.

The DOC's grievance policy does provide for a process in which an inmate can request that first level of the grievance process be waived where "the inmate . . . can demonstrate that using the process is likely to result in identifiable risk of harm to their physical safety or psychological well-being." Id. at IV(A)(4). Such a waiver must be requested within thirty days of the incident to be grieved. Id. However, under the grievance policy, "[a]n unsupported allegation of fear of retaliation without more information is not sufficient" to obtain such a waiver. Id.

The second step in the DOC grievance process is for the prisoner to file, within thirty days of receiving a response to his IRS, a Grievance Form ("GF") with the Warden. See id. at IV(B). The Warden's office maintains a log of each grievance it receives, as well as a copy of the GF and answer thereto. See Aff. of Gail Mansur (doc. no. 18-4) ("Mansur Aff."), at 1.

The third step in the DOC grievance process is for the inmate to file, within thirty days of receiving the Warden's response to his grievance, an appeal, using a GF, to the DOC Commissioner. See id. at IV(c). The Commissioner's office maintains a log of each grievance it receives, as well as a copy of the GF and answer thereto. See Wolcott Aff. at 2 (doc. no. 18-2).

In order to properly grieve any issue in the DOC, inmates must comply with the mandatory timeframes set forth in the grievance policy. See PPD 1.16, IV(E). The use of the appropriate form is also mandatory. See id. at IV(F).

### III. Santiago's Exhaustion Efforts

Defendants assert that Santiago failed to properly exhaust the DOC grievance procedures available to him concerning the February 20, 2013, incident that is the subject of this suit. Defendants assert that, as to the February 20, 2013, incident:

- Santiago never filed an IRS with a unit-level staff member, see Aff. of Danielle Brown (doc. no. 18-8), at 2;

- Santiago filed a GF in the Warden's office on January 13, 2014, see Mansur Aff. at 2, which was denied as untimely as it had been filed approximately eleven months after the incident, see Doc. No. 18-3, at 3 (GF submitted to Warden concerning February 20, 2013, incident); and

- Santiago filed a GF, appealing the Warden's denial of his second-level grievance, in the DOC Commissioner's office on January 20, 2014, see Wolcott Aff. at 2

5

(doc. no. 18-2).

The summary judgment motion also asserts that Santiago knew how to access the first level of the DOC grievance policy, as he filed numerous IRS forms at the unit level between January 2013 and August 6, 2014, that were unrelated to the February 20, 2013, incident.  Specifically, defendants assert that, in that timeframe, Santiago filed forty-nine IRS forms to staff at the unit level between January 2013 and August 6, 2014, see Aff. of Cynthia Crompton (doc. no. 18-6), at 1.

In his responses to the motion for summary judgment (doc. nos. 19 and 23), Santiago concedes that he did not file a timely first-level grievance IRS with unit staff procedure, and does not dispute the dates or contents of the IRSs or GFs he filed between January 13 and August 6, 2014, at the unit level, or with the Warden and Commissioner, as set forth by defendants. Santiago states that he did not file a first-level grievance because, during the timeframe for doing so, he was housed in SHU where the defendants worked.  Santiago states that he did not trust the SHU officers not to discard his grievance documents, and feared retaliation from SHU officers if they knew he was making complaints about the defendants.

Santiago states, and defendants do not deny, that as soon as Santiago was moved out of SHU, and the NHSP, he filed

grievances with both the NHSP Warden and the DOC Commissioner concerning the February 20, 2013 incident.

Santiago also asserts that he did not exhaust his remedies in a timely fashion because he was trying to search for a lawyer to help him in his civil action, that "a lawyer told [him he] had '3 years' to get this done so [he] figured [he] was good." Santiago claims, too, that he did not believe he would get a reasonable response from the prison, and thus he "just wanted to get it to the courts," because he assumed that "the courts would be over the 'D.O.C.'"

## Discussion

### I. Exhaustion Requirement

According to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Claims for which administrative remedies have not been exhausted are subject to dismissal. See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "[A]

7

prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (citation omitted). At the summary judgment phase, defendants bear the initial burden of showing that plaintiff failed to exhaust all of his generally available administrative remedies. See Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015). Then "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). The ultimate burden of persuasion remains with the defendant. See id.

Under certain circumstances, a prisoner's failure to exhaust may be excused. A prisoner might be excused from exhausting remedies where the court finds that the remedies were not "available to the inmate." See Hubbs, 788 F.3d at 59. Additionally, if defendants' actions inhibited the prisoner plaintiff's ability to exhaust otherwise available administrative remedies, those actions may estop the defendants from raising the plaintiff's failure to exhaust as a defense. See Dennis v. Westchester Cty. Jail Corr. Dep't, 485 F. App'x 478, 480 (2d Cir. 2012). Exhaustion of available administrative

8

remedies may also be excused where the plaintiff's failure to exhaust was based on an erroneous, yet reasonable, interpretation of the prison's grievance process. See Vega v. Rell, No. 14-137, 2015 U.S. App. LEXIS 7597, *8 (2d Cir. May 8, 2015).

Additionally, under certain circumstances, a prisoner's failure to exhaust might be excused where corrections officials threaten an inmate in a manner sufficient to support a reasonable fear of retaliation for filing an administrative grievance. See Singh v. Lynch, 460 F. App'x 45, 47 (2d Cir. 2012). However,

> A generalized, unspecific, and subjective belief or fear of retaliation on the part of an inmate cannot give rise to estoppel excusing exhaustion — estoppel principles may nullify the exhaustion requirement, but that type of estoppel must be based upon what the defendants themselves said or did. If an inmate's generalized subjective fear of retaliation, unsupported by objective evidence of a threat, or other reliable grounds to fear retaliation, was sufficient to negate the exhaustion requirement, the requirement would be substantially undermined.

Thompson v. Gordon, No. 09-cv-82-SM, 2010 U.S. Dist. LEXIS 64315, *5-*6 (D.N.H. June 28, 2010). Neither is a prisoner's belief that exhaustion will be futile sufficient to excuse exhaustion of the prison's available administrative remedies, as there is no "'futility exception'" to the PLRA exhaustion requirement. See Medino-Claudio, 292 F.3d at 35 ("there is no

9

'futility exception' to the PLRA exhaustion requirement" (citation omitted)).

## II. The Summary Judgment Papers

In his first response (doc. no. 19) to the motion for summary judgment, Santiago indicated that he did not know how to respond to the motion and had no assistance at the prison. The court then issued an Order (doc. no. 22) granting Santiago two-and-a-half months to file a properly supported objection to the motion for summary judgment, directing Santiago to LR 56.1 and Rule 56 of the Federal Rules of Civil Procedure, and appending copies of those rules to the Order. Santiago's amended response (doc. no. 23) again indicated that he did not know what to do, even with the copies of LR 56.1 and Rule 56 the court sent to him, and that he did not have assistance.

Santiago's responses did state the reasons he failed to timely exhaust his petition, which the court construes as a request to excuse the PLRA's "proper exhaustion" requirement. While the court addresses Santiago's request below, it notes that Santiago has not submitted, in his responses to the defendants' motion for summary judgment, factual assertions of "evidentiary quality." See Sánchez-Rodríguez, 673 F.3d at 9. He has not, therefore, adequately countered any of the facts set forth defendants' motion. Accordingly, the court finds that the

10

properly supported facts submitted by the defendants are admitted.  See LR 56.1.  The court therefore finds that Santiago failed to file an IRS at the unit level, or to seek a waiver of that requirement, within thirty days of the February 20, 2013 incident, and filed no grievance at all related to that incident until January 2014.  Further, Santiago has failed to properly exhaust the available administrative remedies mandated by the DOC's grievance policy, and has therefore failed to satisfy the PLRA's exhaustion requirement.

### III. **Excusal of Exhaustion Requirement**

Santiago argues that he should be excused from complying with the PLRA exhaustion requirement because: A) he was unaware of the thirty-day time limit to begin to grieve his administrative remedies; B) he erroneously believed that his grievance was timely because an unnamed lawyer told him he "had 3 years"; C) he feared retaliation from prison officials if he filed an administrative grievance while housed at SHU; and D) he believed that any grievance filed while he was in SHU would be futile.  As explained above, to the extent they are sufficiently asserted, none of the reasons for Santiago's failure to exhaust are sufficient, as a matter of law, to overcome summary judgment.

Pursuant to the facts asserted by defendants, and deemed

admitted, the court finds that: plaintiff was aware of how to access the administrative grievance process at the DOC, as demonstrated by his repeated use of all of the levels of available grievance procedures between January 2013 and August 6, 2014; no defendant did anything to prevent Santiago from accessing the DOC grievance process; Santiago's fear of retaliation was subjective and nonspecific, and thus insufficient to excuse the first-level of the DOC's exhaustion process; Santiago failed to properly exhaust the administrative remedies available to him at the DOC; and finally, failed to assert an adequate basis to excuse the PLRA's requirement that he exhaust those remedies. Accordingly, the defendants have met their burden to demonstrate that there is no genuine dispute of material fact as to Santiago's failure to meet the PLRA's exhaustion requirements prior to filing suit. The district judge should therefore grant the defendants' motion for summary judgment (doc. no. 18).

## Conclusion

For the foregoing reasons, the district judge should grant the defendants' motion for summary judgment (doc. no. 18), direct the clerk to enter judgment and close this case. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R.

Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011).

                                                _____
                                                Andrea K. Johnstone
                                                United States Magistrate Judge

July 29, 2015

cc:  Jonathan Santiago, pro se
     Nancy J. Smith, Esq.